IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William M. Stevens                              :
                                                :    No. 1429 C.D. 2022
          v.                                    :
                                                :    Argued: October 10, 2023
Commonwealth of Pennsylvania,                   :
Department of Transportation,                   :
Bureau of Driver Licensing,                     :
                    Appellant                   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY JUDGE McCULLOUGH                              FILED:  January 18, 2024

          The Commonwealth of Pennsylvania, Department of Transportation,
Bureau of Driver Licensing (PennDOT), appeals from the November 22, 2022 order of
the Court of Common Pleas of Westmoreland County, Pennsylvania (trial court), which
sustained the statutory appeal of William M. Stevens (Stevens) from a one-year
disqualification of his commercial driver's license (CDL).  PennDOT imposed the
disqualification based on its reception of an electronically transmitted report of
Stevens' conviction of an alcohol-related driving offense in the State of Wisconsin.
The trial court also awarded Stevens attorneys' fees pursuant to Subsection 2503(7) of
the Judicial Code, 42 Pa. C.S. § 2503(7), based on its finding that PennDOT engaged
in vexatious and obdurate conduct.

          On appeal to this Court, PennDOT argues that the trial court erred and
abused its discretion in both sustaining Stevens' statutory appeal and awarding
attorneys' fees.  After careful review, we affirm, in part, and reverse, in part.

# I.     FACTS AND PROCEDURAL HISTORY

The facts material to this appeal can be summarized as follows. By notice mailed on August 17, 2022, PennDOT informed Stevens that his CDL was disqualified for a period of one year, effective September 1, 2022, due to his conviction in Wisconsin of driving under the influence of alcohol (DUI) on September 21, 2019 (Notice of Disqualification). (Reproduced Record (R.R.) at 60a.) The Notice of Disqualification advised, in pertinent part, as follows:

> This is an Official Notice of Disqualification of your commercial driving privilege as authorized by Section 1611[(a)][1] of the Vehicle Code as a result of your . . . conviction . . . in Wisconsin. Section 1611[(h)][2] of the [ ] Vehicle Code mandates that PennDOT process specific out-of-state . . . convictions . . . as though they occurred in Pennsylvania.
>
> Your driving record reflects one of the above adjudications on 02/18/2021 of A21 of the [American Association of Motor Vehicle Administrators (AAMVA)] Code Dictionary [(ACD)][3], DUI ALCOHOL on 9/21/2019. This violation is

---

[1] 75 Pa. C.S. § 1611(a).

[2] 75 Pa. C.S. § 1611(h).

[3] We have explained the ACD as follows:

> The genesis of the ACD arises out of the Commercial Motor Vehicle Safety Act (CMVSA) of 1986, 49 U.S.C [§§ 31301-31317], which provides, among other things, that a driver who has been disqualified from operating a [commercial vehicle] by his home state is unable to obtain a CDL in another jurisdiction. To support the CMVSA, the [ACD] was developed to assist states in exchanging conviction and withdrawal information between licensing authorities. The [ACD] is used by many states to determine the comparability of out-of-state offenses with in[-]state offenses, and its primary function is to enable the Commercial Drivers' License Information System (CDLIS) to exchange convictions and withdrawals. It is an interpretative tool for states involved in the Driver License Compact of 1961, 75 Pa. C.S. §

**(Footnote continued on next page…)**

2

> similar to violating Section 3802[(a)](2) of the [Vehicle Code, 75 Pa. C.S. § 3802(a)(2)]. The AAMVA Code Dictionary was developed to support the Commercial Motor Vehicle [Safety] Act of 1986 and allows states to share conviction information.
>
> Your commercial driving privilege is disqualified for a period of [one] YEAR(S) effective 09/01/2022 at 12:01 A.M.

*Id.* at 60a. Stevens filed a Petition for Appeal in the trial court on September 7, 2022. (R.R. at 4a.) He simultaneously filed an unopposed Motion for Supersedeas, which was granted the same day. (R.R. at 13a-18a.) In his Petition, Stevens alleged, *inter alia*, that the trial court previously had sustained a statutory appeal he filed in 2021 challenging PennDOT's disqualification of his CDL based on the same Wisconsin conviction. (Petition for Appeal, 9/07/22, ¶ 3; R.R. at 5a, 10a.)

The trial court held a *de novo* hearing on November 22, 2022. At the hearing, the Commonwealth introduced its Exhibit 1, which was admitted into evidence over Stevens' objection. (R.R. at 25a.) Exhibit 1 includes a Certification and Attestation from Kara N. Templeton, the Director of PennDOT's Bureau of Driver Licensing, certifying that the other documents and electronic information contained in the exhibit are in PennDOT's custody. Those include (1) the Notice of Disqualification; (2) an "Application for Noncommercial Class C or M Driver License"; (3) an "Out[-]of[-]State Conviction List" (Conviction List); (4) a "Traffic Safety Inquiry"; (5) Stevens' "CDL Holder Date Span Inquiry List"; and (6) Stevens'

---

1581, to "translate" the nature of a conviction reported by a sister state. Because its origin and purpose make it the type of document of which judicial notice can be taken as it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," it was properly admitted. Pa.R.E. 201(b)(2).

*Hyer v. Department of Transportation, Bureau of Driver Licensing*, 957 A.2d 807, 810 (Pa. Cmwlth. 2008).

commercial driving record. (R.R. at 59a.)[4] Pertinent here, the Conviction List includes an entry for a conviction from Wisconsin with a violation date of September 21, 2019, a conviction date of February 18, 2021, and a transmission date of July 21, 2022 (Wisconsin Conviction).[5] (R.R. at 65a.) The entry includes a "Code" number of 157,[6] an "ACD Code" of A21,[7] and a citation to Section 3802(a)(2) of the Vehicle Code, 75 Pa. C.S. § 3802(a)(2). *Id.* Unlike several other entries in the Conviction List, the Wisconsin Conviction does not contain a certification date. *Id.* PennDOT did not introduce any other evidence.

---

[4] In her Certification and Attestation, Templeton certified that the documents in Exhibit 1 are "full, true, and correct photostatic, microfiche, microfilm, facsimile, or printed copies of documents and/or electronically stored information of which [she has] legal custody, and that the copies conform to the requirements of [S]ection 6109 of the Judicial Code[, 42 Pa. C.S. § 6109]." (R.R. at 59a) (capitalizations removed). Templeton further certified the records and information contained in Exhibit 1 "as prescribed by Sections 6103 and 6109 of the Judicial Code, . . . 42 Pa. C.S. §§[ ]6103 and 6109." *Id.*

[5] There is no explanation in Exhibit 1 or elsewhere in the record for the 17-month delay between the conviction date and the transmission of the conviction to PennDOT.

[6] The Wisconsin Department of Transportation publishes on its website driver licensing abbreviation codes with corresponding charge points. The code "157" refers to Commercial Operating While Intoxicated (CWI) and references Wisconsin Statutes (Wis. Stat.) § 346.63(1)(a) (2016). *See* Driver Licensing Abbreviation Codes With Charge Points, available at https://wisconsindot.gov/documents/dmv/shared/bds109.pdf (last visited January 17, 2024). This information also is provided in the MVR Decoder Digest for the State of Wisconsin (Wisconsin Digest), which was given to the trial court during the *de novo* hearing but not admitted into evidence. (R.R. at 26a.) PennDOT appended the Wisconsin Digest to its brief as Appendix C. *See* PennDOT Br. at Appendix C. It indicates that the code "157" corresponds with CWI. (PennDOT Br., Appendix C, at 438.) In any event, because the trial court did not admit the Wisconsin Digest into evidence and did not sustain Stevens' appeal based on any indecipherability of the ACD codes, we need not address whether the Wisconsin Digest theoretically would be admissible.

[7] The ACD indicates that the code "A21" refers to driving or operating a motor vehicle under the influence of alcohol. *See* AAMVA Code Dictionary, available at https://www.aamva.org/getmedia/b1fd2b7f-8040-4764-9b4e-4ca464c43a2c/ACD-Manual-5-2-5.pdf (last visited January 17, 2024).

4

After PennDOT rested, Stevens' counsel argued that PennDOT did not establish a *prima facie* conviction in Wisconsin of an alcohol-related offense. Counsel contended that code "157" in the Conviction List referred to a Wisconsin statute that had nothing to do with driving. (R.R. at 23a.) He also argued that PennDOT's introduction of the Conviction List, which is an internally-compiled PennDOT document, was not a "report" of Stevens' conviction from Wisconsin sufficient to satisfy the requirements of Subsection 1611(h) of the Vehicle Code, 75 Pa. C.S. § 1611(h). (R.R. at 23a-27a.)

The trial court ultimately sustained Stevens' appeal, concluding that the lack of a certification date in the Conviction List was fatal to PennDOT's *prima facie* case:

> I think we went through this last time. If there's no date of certification from the issuing state as they allege in this document, there's no date of certification. There is no certification.
>
> . . . .
>
> There's vital information that is not listed here. That is the date of certification and—so that's not going to—the document that PennDOT has issued here is not going to meet the standard necessary for me to make any determination other than actually the determination I made last year, and that is to sustain.
>
> . . . .
>
> I'm going to sustain the appeal at this point. I'm not—I'm going to sustain it on the evidence from the documents that [PennDOT] has offered and have been admitted in this case.
>
> I don't think again that [PennDOT] has met its burden here. That specifically has to do with the aspect of certification of the matter complained of from Wisconsin.

(R.R. at 27a-28a, 31a.)

Stevens' counsel then made an oral motion for attorneys' fees under 42 Pa. C.S. § 2503(7), arguing that PennDOT engaged in dilatory, vexatious, and obdurate conduct in attempting to rely on the Wisconsin Conviction to support two separate CDL disqualifications. Stevens' counsel argued that PennDOT first relied on the Wisconsin Conviction to issue a drug-related disqualification in 2021. After Stevens' statutory appeal of that disqualification was sustained, PennDOT again disqualified Stevens' CDL based on the same conviction, this time reported from Wisconsin as an alcohol-related violation. Stevens' counsel introduced several documents into evidence, including a copy of his fee agreement with Stevens, an invoice for legal services related to Stevens' appeal, a copy of the disposition of Stevens' conviction in Wisconsin, a copy of the criminal docket from Wisconsin, and a copy of the criminal case details from Wisconsin. (Stevens Exhibits A-D; R.R. at 85a-92a.)

Relevant here, Stevens' Exhibit C, the disposition summary from the Wisconsin Conviction, indicates that Stevens was charged at Case No. 2020-TR-003499 with operating while under the influence (OWI) of a controlled substance in violation of Wisconsin Statutes § 346.63(1)(am)(2016). (Stevens Exhibit C; R.R. at 88a, 90a.) It indicates an arrest date of September 21, 2019, and a conviction date of February 18, 2021. *Id.* The court docket associated with Case No. 2020-TR-003499 states that Stevens pled no contest to the charge and that three of Stevens' Wisconsin cases (Nos. 2020-TR-003499,[8] 2019-CF-1358, and 2019-TR-8697) were disposed of together. (R.R. at 90a.) In pertinent part, the summary of the plea and sentencing proceedings provides:

---

[8] The disposition summary includes what apparently are typographical errors in referring to case numbers "2020-TR-003499" and "19TR3499." Because the information associated with each is identical, we see no reason not to treat them as the same case.

09:03 AM **Cases 19CF1358, <u>19TR8697</u> and 19TR3499** held via Zoom. Defendant William M[.] Stevens and Attorney Karleigh K. Miller appear separately via video. Attorney Angela Beranek appeared for the State of Wisconsin.

**There is an agreement.** Defendant waives [his] right to appear in person and Court accepts waiver. **Defendant is advised of charges, maximum penalties, elements of the crime(s) and constitutional rights.**

In **19CF1358:** Defendant pleads No Contest to amended Count 1: Possession of Amphetamine and Count 2: Possession of [tetrahydrocannabinol (THC).]

In **19TR3499:** Defendant pleads No Contest to OWI (1st). Court accepts No Contest pleas and finds the defendant Guilty. In Counts 1 and 2 of 19CF1358, Court orders court costs only.

In **19TR3499** Court orders defendant to pay $811.00 (fine + costs), 6 months driver's license revocation and orders defendant to complete an [Alcohol and Other Drug Abuse (AODA)] assessment and driver's safety and follow through with recommendations.

**<u>Anything else is dismissed and read in.</u>**

(Stevens Exhibit C; R.R. at 90a-91a) (emphasis provided).

Stevens' counsel argued that PennDOT submitted documents that it knew were false to establish its *prima facie* case. Counsel further argued that PennDOT would not rescind the disqualification even after receiving the documentation showing that the Wisconsin Conviction was not alcohol related. (R.R. at 32a-33a.)[9] PennDOT's counsel argued in response that PennDOT regularly processes disqualifications based on reports of out-of-state convictions and that it would not have

---

[9] Stevens' counsel explained that, prior to filing the statutory appeal, he and PennDOT's counsel exchanged email communications in which he advised PennDOT that the conviction report from Wisconsin was not correct and that Stevens' conviction was not alcohol related. (R.R. at 38a-39a.) Those email communications are not included in the record.

issued the disqualification without certified information from Wisconsin. (R.R. at 43a.) PennDOT's counsel further elaborated:

> If things get messed up when another state reports an out-of-state adjudication or conviction to us, there are avenues to appeal that. That's why we're here today, Your Honor.
>
> [The trial court] is better suited to figuring out what happened than [PennDOT] having to second-guess every out-of-state report from another state . . . .
>
> On its face, it seemed to go along with every other out-of-state report of conviction that PennDOT receives. . . . We mark it. We put it in the out-of-state conviction list. We certify that. Attest to it. Present it to [the trial court].

(R.R. at 45a-46a.)

The trial court rejected PennDOT's arguments and awarded Stevens attorneys' fees in the amount of $10,200.00, for what the trial court characterized as PennDOT's "obdurate" behavior in twice attempting to disqualify Stevens' CDL based on the same conviction. (R.R. at 50a.)

PennDOT now appeals to this Court.

## II. ISSUES

PennDOT raises four issues on appeal, which we summarize as follows: (1) whether the trial court abused its discretion in concluding that PennDOT failed to satisfy its *prima facie* burden of proof; (2) whether Stevens established by clear and convincing evidence that he was not convicted in Wisconsin of driving under the influence of alcohol; (3) whether the trial court erred as a matter of law in concluding that PennDOT was barred by *res judicata* from disqualifying Stevens' CDL based on

8

the Wisconsin Conviction;[10] and (4) whether the trial court abused its discretion in awarding Stevens attorneys' fees pursuant to 42 Pa. C.S. § 2503(7).

## III. DISCUSSION[11]

### A. PennDOT's *Prima Facie* Case

PennDOT first argues that the trial court erred and abused its discretion in concluding that PennDOT did not establish a *prima facie* Wisconsin conviction of an alcohol-related offense justifying the disqualification of Stevens' CDL. We are constrained to agree.

When a license suspension is based on a conviction, the only issues that may be considered on appeal are: (1) whether the licensee was actually convicted; and (2) whether PennDOT acted in accordance with applicable law in imposing the suspension. *Department of Transportation, Bureau of Driver Licensing v. Barco*, 656 A.2d 544, 546 (Pa. Cmwlth. 1994). Once PennDOT establishes a *prima facie* case that a licensee was convicted, the burden then shifts to the licensee, who must prove by clear and convincing evidence that the conviction did not occur. *Dick v. Department of Transportation, Bureau of Driver Licensing*, 3 A.3d 703, 707 (Pa. Cmwlth. 2010). "Clear and convincing" evidence is "evidence that is so clear and direct as to permit the trier of fact to reach a clear conviction, without hesitancy, as to the truth of the facts at issue." *Mateskovich v. Department of Transportation, Bureau of Driver Licensing*,

---

[10] Although the trial court did not make an on-the-record ruling on the *res judicata* issue, it concluded in its Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 1925(a) opinion (Trial Ct. Op.) that PennDOT was barred by *res judicata* from relitigating the Wisconsin Conviction in this case. (Trial Ct. Op. at 3; R.R. at 115a.)

[11] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Gammer v. Department of Transportation, Bureau of Driver Licensing*, 995 A.2d 380, 383 n.3 (Pa. Cmwlth. 2010).

755 A.2d 100, 102 n.6 (Pa. Cmwlth. 2000). Whether evidence meets the "clear and convincing" standard is a question of law. *Fell v. Department of Transportation, Bureau of Motor Vehicles*, 925 A.2d 232, 239 (Pa. Cmwlth. 2007).

Section 1611 of the Vehicle Code, which governs the circumstances in which PennDOT *must* disqualify a CDL based on the licensee's conviction, provides, in relevant part, as follows:

> **(a) First violation of certain offenses.--**Upon receipt of a *report of conviction*, [PennDOT] shall, in addition to any other penalties imposed under this title, disqualify any person from driving a commercial motor vehicle or school vehicle for a period of one year for the first violation of:
>
>> (1) [S]ection 3802 (relating to driving under influence of alcohol or controlled substance) or former section 3731, where the person was a commercial driver at the time the violation occurred . . . .
>
> . . . .
>
> **(h) Conviction in Federal court or another state.--**For purposes of the provisions of this section, *a copy of a report of conviction* . . . from . . . another state for an offense similar to those offenses which would result in disqualification in this section *shall be treated* by [PennDOT] as if the conviction had occurred in this Commonwealth.

75 Pa. C.S. § 1611(a)(1), (h) (emphasis added). Subsection 1550(d) of the Vehicle Code, which governs judicial review in statutory appeals of license suspensions, provides, in pertinent, part, as follows:

> **(d) Documentation.--**
>
> (1) In any proceeding under this section, documents received by [PennDOT] from the courts or administrative bodies of other states or the Federal Government shall be admissible into evidence to support [PennDOT's] case. In addition, [PennDOT] may treat the received documents as documents of [PennDOT] and use any of the methods of storage

10

permitted under the provisions of 42 Pa.C.S. § 6109[12] (relating to photographic copies of business and public records) and may reproduce such documents in accordance with the provisions of 42 Pa.C.S. § 6103[13] (relating to proof of official records). *In addition, if [PennDOT] receives information from courts or administrative bodies of other states or the Federal Government by means of electronic transmission, it may certify that it has received the information by means of electronic transmission and that certification shall be prima facie proof of the adjudication and facts contained in such an electronic transmission.*

75 Pa. C.S. § 1550(d) (emphasis added).

These two provisions are clear on their face. Section 1611, which governs *when* PennDOT must act to disqualify a CDL, provides that it must do so upon receipt of a report, no matter whether certified, of a qualifying conviction from another state. Subsection 1550(d), which governs *how* PennDOT may establish the existence of such a conviction in statutory appeal proceedings, permits PennDOT to certify that it has received from another state, by electronic transmission, information detailing an out-of-state conviction that requires license disqualification. Such certification by PennDOT constitutes *prima facie* proof of the adjudication and facts associated with the conviction. *See Bergen v. Department of Transportation, Bureau of Driver Licensing*, 785 A.2d 157, 165-66 (Pa. Cmwlth. 2001) ("The Vehicle Code clearly permits electronic submissions from other states to support Pennsylvania license

---

[12] Section 6109 is titled "photographic copies of business and public records" and governs the introduction in judicial proceedings of copies of original records kept by a government agency in its regular course of business or activity. *See* 42 Pa. C.S. § 6109(b).

[13] Section 6103 provides, in pertinent part, that "[a]n official record kept within this Commonwealth by any . . . government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has the custody." 42 Pa. C.S. § 6103(a).

11

suspensions."); *Kulp v. Department of Transportation, Bureau of Driver Licensing*, 795 A.2d 471, 478 (Pa. Cmwlth. 2002).[14] PennDOT's retention of, and reliance upon, electronic *information* received from other states is further countenanced by Subsection 1516(b) of the Vehicle Code, which provides as follows:

> **(b) Accidents and convictions.**—[PennDOT] shall file all accident reports and abstracts of court records of convictions received by it under the laws of this Commonwealth and maintain actual or facsimile records *or make suitable notations* in order that the records of each licensee showing convictions of the licensee, any departmental action initiated against the licensee regarding a reportable accident in which the licensee was involved, and the traffic accidents shall be available for official use. . . . Where the licensee was a commercial driver at the time of the violation, [PennDOT] shall maintain records *or make notations* for all convictions of any violation, in any motor vehicle, of a State or local traffic control law, except a parking violation, and also for any other convictions that are relevant to the licensee's operating privilege.

75 Pa. C.S. § 1516(b).

---

[14] In *Kulp*, the licensee challenged PennDOT's introduction of an electronically transmitted report of his conviction in New Jersey of driving while intoxicated (DWI) to support its disqualification of his license under Section 1532(b)(3) of the Vehicle Code. The licensee argued that PennDOT was required to present a report of the conviction certified by the State of New Jersey rather than only a certification from PennDOT that it received the report electronically. *Id.* at 478. Relying on *Bergen*, we rejected the argument, concluding as follows:

> [In *Bergen*], this Court held that 75 Pa. C.S. § 1532(b)(3) does not require certified reports . . . because 75 Pa. C.S. § 1550(d)(1) specifically authorize[s] [PennDOT] to use electronically transmitted reports and mandates their admissibility in statutory appeal hearings. So long as the New Jersey report is certified by the Secretary of Transportation and the Director of the Bureau of Driver Licensing, the report may be admitted into evidence.

*Id.* (citations omitted).

Thus, reading and applying these sections of the Vehicle Code together, it is clear that PennDOT, strictly speaking, carried its *prima facie* burden of proof before the trial court. PennDOT's Exhibit 1 compiles a packet of documents, certified by the Director of the Bureau of Driver Licensing, that included, *inter alia*, the Notice of Disqualification, an "Out[-]of[-]State Conviction Electronically Received From the State of Wisconsin," an "Electronically Stored Out of State Conviction Report," Stevens' "CDL Holder Date Span Inquiry List," and Stevens' commercial driving record. Exhibit 1 complies with both Subsections 1611(h) and 1550(d), notwithstanding that it does not include a physical conviction report or certification date from the State of Wisconsin. *Cf. Yonce v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 296 C.D. 2013, filed November 13, 2013), slip op. at 2, 5, 2013 WL 6046037 at *1, *3 (PennDOT's presentation of certification page, notice of disqualification, out-of-state conviction list, traffic safety inquiry, CDL holder date span inquiry list, certification statement, and certified driving history, constituted sufficient evidence of out-of-state conviction to carry PennDOT's *prima facie* burden of proof); *Ronk v. Department of Transportation*, *Bureau of Driver Licensing* (Pa. Cmwlth., No. 1440 C.D. 2010, filed August 11, 2011), slip op. at 5-7 & n. 7, 2011 WL 10845825 at *2-*3 & n.7 (PennDOT's submission of uncertified copy of out-of-state conviction report sufficient to carry its *prima facie* burden of proof to establish conviction; the plain language of Sections 1611(a) and 1611(h) of the Vehicle Code do not require the submission of "certified" copies to prove conviction justifying disqualification; prior versions of both subsections required "certified" copies, which requirement was expressly removed by the General Assembly).[15]

---

[15] Pursuant to Section 414(a) of our internal operating procedures, unreported decisions of this Court issued after January 15, 2008, may be cited for their persuasive value. *See* 210 Pa. Code § 69.414(a).

The trial court, at times, intermingled its analysis of whether PennDOT had met its *prima facie* burden of proof with its analysis of whether Stevens presented clear and convincing evidence that PennDOT's documents were incorrect and there was, in fact, no out-of-state conviction justifying disqualification. At the *de novo* hearing, although Stevens' counsel challenged the accuracy of the ACD codes reported to PennDOT from Wisconsin, the trial court based its conclusion that PennDOT had not carried its *prima facie* burden of proof exclusively on the lack of a certification date accompanying the Wisconsin Conviction. (R.R. at 27a, 28a, 31a; Trial Ct. Op. at 3.) Without considering the additional evidence presented by Stevens, which we address below, we must conclude that the trial court erred in this respect. PennDOT's satisfaction of its burden of proof gave rise to a rebuttable presumption that Stevens was convicted, which he then could overcome with clear and convincing evidence.[16] We turn next to that issue.

## B. Clear and Convincing Evidence

PennDOT argues that Stevens did not satisfy his burden to establish, with clear and convincing evidence, that PennDOT's records were inaccurate and, accordingly, that he was not in fact convicted of an alcohol-related driving offense in

---

[16] It appears that PennDOT for years has been utilizing documents identical or very similar to those it relied upon here to make its *prima facie* case. In *Burgess v. Department of Transportation, Bureau of Driver's Licensing* (Pa. Cmwlth., No. 861 C.D. 2007, filed April 4, 2008), 2008 WL 9406339 (unreported), a licensee objected to PennDOT's introduction of (1) a certification page; (2) a copy of the notice of disqualification, (3) a copy of an "out[-]of[-]state conviction list"; (4) a "traffic safety inquiry"; (5) a copy of the form utilized by a disqualified commercial driver to obtain a regular driver's license; (6) a certification statement; and (7) a certified driving history to establish a *prima facie* case of a license-disqualifying conviction. *Id.*, slip op. at 2, 2008 WL 9406339 at *1. The licensee argued, in part, that the records were insufficient because they did not contain a certification from the State of New York. *Id.* We ultimately concluded that the licensee waived the issue by failing to adequately brief it. (*Id.*, slip op. at 4; 2008 WL 9406339 at *2). *See also Hyer*, 957 A.2d at 809 (same documents introduced by PennDOT and admitted without objection; admissibility not at issue on appeal).

14

Wisconsin. The trial court concluded that Stevens' evidence, particularly the dispositional criminal records from the Wisconsin criminal court, clearly indicated that Stevens was convicted of a *drug-related* driving offense that PennDOT previously relied upon to disqualify Stevens' CDL in 2021. (Trial Ct. Op. at 2-3.) The trial court accordingly concluded that PennDOT's records did not establish that the Wisconsin Conviction was for a comparable alcohol-related driving offense that would mandate disqualification of his CDL in Pennsylvania. We agree.

Where PennDOT has established a *prima facie* case that the licensee was convicted of a comparable license-disqualifying offense, we have found "clear and convincing" evidence demonstrating to the contrary where a licensee presents documentary evidence showing that PennDOT's records are irregular or incorrect. *Mateskovich*, 755 A.2d at 102 (citing cases). We generally also have held that the licensee's uncorroborated testimony does not constitute clear and convincing evidence. *Fell*, 925 A.2d at 239 (citing *Fagan v. Department of Transportation, Bureau of Motor Vehicles*, 875 A.2d 1195, 1199 (Pa. Cmwlth. 2005)).

Stevens presented, albeit in connection with his request for attorneys' fees, records from the criminal court in Wisconsin showing that he pleaded no contest to three offenses as part of a global plea agreement on February 18, 2021. Those records show an arrest/offense date of September 21, 2019. (R.R. at 88a, 90a-91a.) Regarding Case No. 2020-TR-3499 specifically, Stevens pleaded no contest to a violation of Wisconsin Statutes § 346.63(1)(am), which provides that "[n]o person may drive or operate a motor vehicle while . . . [t]he person has a detectable amount of a restricted controlled substance in his or her blood." Wis. Stat. § 346.63(1)(am)(2016). The Wisconsin Court sentenced Stevens on this conviction to pay a fine and costs, undergo a six-month license suspension, complete an AODA assessment and driver's safety

15

course, and comply with any recommendations. (R.R. at 91a-92a.) In the second case, No. 2019-CF-1358, Stevens pled no contest to two possessory drug offenses, and the criminal court sentenced him to pay court costs only. (R.R. at 90a.) Although there is no specific disposition included for the third case, No. 2019-TR-8697, the criminal court's sentence states that "[a]nything else is dismissed and read in." *Id.* Nowhere in any of the Wisconsin criminal court records does it indicate that Stevens was convicted of an alcohol-related offense with an offense date of September 21, 2019, and a conviction date of February 18, 2021. Rather, these records indicate that Stevens was convicted of only drug-related offenses and that any other charges, alcohol related or otherwise, were dismissed. The records also are entirely consistent with Stevens' argument that PennDOT previously attempted in 2021 to disqualify his CDL based on the Wisconsin Conviction which, at the time, PennDOT reported as being drug related.[17]

PennDOT argues that Stevens did not present clear and convincing evidence rebutting the presumption created by its *prima facie* case because Stevens' evidence leaves open the possibility that he was *also* convicted on February 18, 2021, of an alcohol-related offense. PennDOT argues the possibility that, in Case No. 2019-TR-8697, Stevens could have pled guilty to an alcohol-related offense that was adjudicated elsewhere. This creates, argues PennDOT, a number of possibilities that

---

[17] We note that, although there is much discussion in the record and the parties' briefs regarding Stevens' prior statutory appeal in the trial court, the only evidence in the record of what occurred in that appeal is the order of the trial court sustaining it. (R.R. at 10a.) That order, entered at Case No. 974 of 2021 and dated June 15, 2021, indicates only that Stevens' appeal was sustained and that the trial court "refuse[d] to remand to PennDOT for further action." *Id.* PennDOT did not appeal that order. We thus do not know what evidence either PennDOT or Stevens presented in that appeal, the trial court's specific findings and conclusions, or the records or information from Wisconsin that PennDOT relied on in disqualifying Stevens' CDL. There does not appear to be any dispute in the record, however, that the offense involved in that appeal was drug related and from the State of Wisconsin.

16

render Stevens' evidence to be less than clear and convincing. We disagree. First, it is clear in the criminal court records that Stevens reached a plea agreement with regard to *all three cases* that were disposed of together; otherwise, all three case numbers would not have been included in the docket entry. Second, the possibility that Case No. 2019-TR-8697 was an alcohol-related offense disposed of elsewhere is removed by the criminal court's inclusive language indicating that "everything else is dismissed and read in." To interpret those words to mean anything other than exactly what they say is unwarranted: Case No. 2019-TR-8697 apparently was dismissed and carried no separate sentence. It accordingly could not be, by any reasonable interpretation, an alcohol-related conviction.

In sum, we conclude that Stevens' evidence establishes, clearly and convincingly, that he was not convicted on February 18, 2021, of an alcohol-related offense in Wisconsin that would require the disqualification of his CDL in Pennsylvania. The records maintained by PennDOT therefore are inaccurate, and the presumption in its favor is rebutted. Although the trial court reached the same determination by slightly irregular analysis, we nevertheless affirm its conclusion that Stevens' statutory appeal should be sustained on this basis.

## C.    Res Judicata

PennDOT argues thirdly that the trial court erred in concluding that the disqualification of Stevens' CDL in this matter is barred by principles of *res judicata* based on the disposition of Stevens' prior statutory appeal in the trial court. We do not reach this issue for two reasons. First, because we affirm the trial court on other grounds, namely that Stevens presented clear and convincing evidence that he was not convicted in Wisconsin of a comparable alcohol-related offense, we need not address whether the disposition of his prior appeal controls here. Second, as we already have

17

noted, there is little actual evidence in the record of what occurred in Stevens' prior appeal. We know only that it involved Stevens and PennDOT, that it was sustained, and that the parties here appear to agree that it involved a drug-related offense in Wisconsin. With only those facts, we could not make any sound determination of whether, or to what extent, *res judicata* might apply.

## D. Attorneys' Fees

In its last issue, PennDOT argues that the trial court abused its discretion in awarding Stevens $10,200.00 in attorneys' fees pursuant to Subsection 2503(7) of the Judicial Code, 42 Pa. C.S. § 2503(7).[18] Stevens argues to the contrary that the trial court appropriately awarded fees under Subsection 2503(7) and, further, that an award of fees also is warranted pursuant to Pa. R.A.P. 2744.

### 1. Subsection 2503(7)

Subsection 2503(7) of the Judicial Code authorizes an award of reasonable attorneys' fees as part of the taxable costs of a case where any party engages in "dilatory, obdurate, or vexatious conduct during the pendency of a matter." 42 Pa. C.S. § 2503(7).

> Arbitrary conduct is that which is based on random or convenient selection or choice rather than based upon reason or nature. Litigation is vexatious when suit is filed without sufficient grounds in either law or fact and if the suit served the sole purpose of causing annoyance. A lawsuit is commenced in bad faith when it is filed for purposes of fraud, dishonesty or corruption.

---

[18] Generally, where a trial court's findings of fact are supported by the record, an award of counsel fees under Section 2503 will not be disturbed absent of an abuse of discretion. *Township of South Strabane v. Piecknick*, 686 A.2d 1297, 1300 n.6 (Pa. 1996); *Maurice A. Nernberg & Associates v. Coyne,* 920 A.2d 967, 969 n.3 (Pa. Cmwlth. 2007).

18

*Township of Lower Merion v. QED, Inc.*, 762 A.2d 779, 781-82 (Pa. 2000) (citing *Thunberg v. Strause*, 682 A.2d 295 (Pa. 1996)). Attorneys' fees may be awarded under Section 2503 only for prohibited conduct that occurs during, but nor prior to, litigation. *Calson v. Clavarelli*, 100 A.3d 731, 745 (Pa. Cmwlth. 2014).

The trial court awarded fees under Subsection 2503(7) because of what it found to be PennDOT's vexatious conduct in (1) "entirely" failing to meet its burden to prove the Wisconsin Conviction and (2) attempting to relitigate Stevens' prior disqualification appeal, both despite having received evidence in advance from Stevens' counsel that could have resolved the matter without the need for hearing. (Trial Ct. Op. at 4; R.R at 116a.) The trial court concluded that this conduct justified an award of attorneys' fees because it was a "relentless pursuit of a claim which plainly lacks legal merit." *Id.* (citing *Miller v. Nelson*, 768 A.2d 858, 862 (Pa. Super. 2001)).

In *Department of Transportation, Bureau of Driver Licensing v. Hruska*, 625 A.2d 1339 (Pa. Cmwlth. 1993), PennDOT appealed a trial court order sustaining several license suspension appeals and awarding costs and attorneys' fees pursuant to Section 2503. The licensees in *Hruska* were convicted of underage drinking,[19] and reports of their convictions were sent to PennDOT. The licensees filed summary appeals of their convictions to the trial court, and PennDOT subsequently suspended the licensees' driver's licenses. *Id.* at 1340-41. All of the licensees were found not guilty of underage drinking in the trial court, and their counsel accordingly contacted PennDOT to advise it of the verdicts. PennDOT declined to rescind the suspensions. *Id.* at 1341. The licensees then filed appeals of their license suspensions in the trial court, requesting, in part, an award of attorneys' fees because of the Department's "alleged arbitrary and capricious action in imposing license suspensions . . . before

---

[19] 18 Pa. C.S. § 6308(a).

their appeals were heard and in refusing to rescind the suspension[s] once [the licensees'] convictions were overturned." *Id.* Before the trial court, PennDOT conceded that the appeals should be sustained, but opposed the imposition of attorneys' fees and costs. *Id.* The trial court sustained all of the appeals and awarded attorneys' fees and costs. *Id.* at 1341.

On appeal to this Court, PennDOT argued that the trial court abused its discretion in awarding attorneys' fees without any statutory authority to do so. *Id.* The licensees argued that attorneys' fees were recoverable, as pertinent here, under Subsection 2503(7), due to PennDOT's obdurate, vexatious, and bad faith conduct in refusing to lift the suspensions and forcing the licensees to proceed to a *de novo* hearing after receiving notice of their acquittals. *Id.* at 1341-42. We disagreed, concluding that the trial court had no basis under Subsection 2503(7) to award attorneys' fees. We noted that PennDOT had no discretion to not impose the suspensions notwithstanding the licensees' filing of summary criminal appeals. We further noted that, under the clear language of Subsection 2503(7), none of PennDOT's conduct prior to the date of the filing of the statutory appeals could serve as a basis for an award of attorneys' fees, as that subsection applies only to conduct occurring "*during the pendency of a matter.*" *Id.* at 1342. Regarding PennDOT's refusal to rescind the suspension prior to hearing, we concluded as follows:

> [T]he record does not reveal . . . that [PennDOT] engaged in any dilatory, obdurate, or vexatious behavior after [the licensees] appealed their license suspensions. [PennDOT] simply allowed the appeal to proceed to a hearing at which it offered no contest.

> [A]gain, there is no evidence that its conduct was arbitrary, vexatious or in bad faith. Appellees seem to allege that [PennDOT's] conduct in allowing this matter to go to a hearing was not in their own best interests as it required them to engage the service of their attorney for a longer period of

20

> time. Even if true, this is not a basis to award attorneys['] fees.

*Id.*

Here, the trial court awarded fees under Section 2503(7) because it concluded that PennDOT engaged in obdurate and vexatious conduct in disqualifying Stevens' CDL and relitigating Stevens' Wisconsin Conviction despite receiving, in advance, evidence that its records were inaccurate and the matter already had been disposed of a year earlier. (Trial Ct. Op. at 4; R.R. at 116a, 46a-47a, 50a.) Although we agree that Stevens provided PennDOT with evidence in advance of the hearing that clearly and convincingly showed that PennDOT's records were inaccurate and that he was not in fact convicted of an alcohol-related driving offense in Wisconsin, we nevertheless cannot affirm the trial court's award of fees pursuant to Subsection 2503(7) for several reasons. First, and most plainly, the mere presence of clear and convincing evidence that PennDOT's records are inaccurate cannot, by itself, warrant an award of counsel fees. Otherwise, they would be awarded in every case where a licensee carries his or her burden to rebut the presumption created by PennDOT's *prima facie* case.

Second, although there is extensive discussion between counsel in the *de novo* hearing record regarding what transpired prior to the hearing, there is no documentary evidence of exactly what was provided to PennDOT, when and how PennDOT responded, and the timeline of those events. Those circumstances certainly are relevant to a determination of whether PennDOT engaged in "dilatory, obdurate, or vexatious" conduct to a degree warranting an assessment of attorneys' fees. The only communication between counsel that is included in the record is an email from PennDOT's counsel agreeing to a supersedeas. (R.R. at 16a.) This omission from the record is particularly problematic because, as we stated in *Hruska*, (1) only conduct

21

that occurs *after* the filing of the statutory appeal (i.e., "during the pendency of" the matter) is relevant, and (2) PennDOT's mere insistence that a statutory appeal proceed to *de novo* hearing is not, in itself, a ground for an award of attorneys' fees.

Third, and as we already have noted, there is almost no *evidence* in the record establishing what exactly occurred in Stevens' prior statutory appeal in the trial court. We know that the appeal was sustained and that, apparently, it involved Stevens' out-of-state conviction from Wisconsin. No records from those proceedings were introduced in the trial court, and we therefore have no evidentiary basis to determine what PennDOT knew about that case prior to the *de novo* hearing in this one.

In sum, we conclude that the record before us does not include substantial evidence supporting the trial court's finding that PennDOT engaged in dilatory, obdurate, or vexatious conduct that would justify an award of counsel fees under Subsection 2503(7). To be clear, we do not conclude that these circumstances, *if proven*, could not as a matter of law support an award of attorneys' fees. Subject to the limitations we identified in *Hruska*, our decision herein would not necessarily preclude a licensee from seeking an award of fees where PennDOT's pre-hearing conduct warranted it. We conclude only that, on this record, the trial court's findings are not supported by substantial evidence and, accordingly, constitute an abuse of discretion.

## 2.    Pa. R.A.P. 2744

Stevens argues on appeal that attorneys' fees are separately awardable pursuant to Pa. R.A.P. 2744, which permits an appellate court to award reasonable attorneys' fees "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is "dilatory, obdurate, or vexatious." Pa. R.A.P. 2744. Stevens argues that, because PennDOT's

22

appeal to this Court is based solely on PennDOT's challenge to "a factual finding that was supported by the record and that was accordingly subject to review only for abuse of discretion," an award of fees is warranted. (Stevens' Br. at 20.) *See DiCola v. Department of Transportation*, *Bureau of Driver Licensing*, 694 A.2d 398, 401 (Pa. Cmwlth. 1997) (citing *Morrell v. Department of Transportation, Bureau of Traffic Safety*, 575 A.2d 171 (Pa. Cmwlth. 1990)).

Quite plainly, given our ruling in PennDOT's favor on its first issue, its appeal was not frivolous. Although the trial court's ruling was, in substance, correct, it nevertheless was analytically irregular and warranted clarification on appeal. And, because there is no other evidence that PennDOT engaged in vexatious, obdurate, or dilatory conduct in pursuing its appeal, we decline to award attorneys' fees under Rule 2744.

## IV. CONCLUSION

To the extent that the trial court concluded that PennDOT did not establish a *prima facie* case of Stevens' out-of-state conviction of an alcohol-related driving offense requiring disqualification of his CDL in Pennsylvania, it erred. However, to the extent that the trial court also concluded that Stevens presented clear and convincing evidence that PennDOT's documentation was incorrect and that he was not, in fact, so convicted, it was correct. Such clear and convincing evidence exists in this case, and we affirm on that basis the trial court's decision sustaining Stevens' statutory appeal. Finally, the trial court's award of attorneys' fees was an abuse of discretion, and we accordingly reverse that portion of its decision.

_____
PATRICIA A. McCULLOUGH, Judge

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William M. Stevens                    :
                                      :    No. 1429 C.D. 2022
                    v.                :
                                      :
Commonwealth of Pennsylvania,         :
Department of Transportation,         :
Bureau of Driver Licensing,           :
                    Appellant         :


## *ORDER*


AND NOW, this 18th day of January, 2024, the Order of the Court of Common Pleas of Westmoreland County (trial court) hereby is AFFIRMED, in part, and REVERSED, in part. The trial court's November 22, 2022 order is AFFIRMED to the extent that it sustained Appellee William M. Stevens' license suspension appeal. The order is REVERSED to the extent that it assessed attorneys' fees against Appellant Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing.


                                    _____
                                    PATRICIA A. McCULLOUGH, Judge